IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


TAMARA L. STEPHENS                                                    PLAINTIFF

V.                                    NO. 13-2144

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration          DEFENDANT


## MEMORANDUM OPINION


Plaintiff, Tamara L. Stephens, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claim for supplemental security income (SSI) under the provisions

of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine

whether there is substantial evidence in the administrative record to support the Commissioner's

decision. See 42 U.S.C. § 405(g).

### I.    Procedural Background:

Plaintiff protectively filed her current application for SSI on October 8, 2010, alleging

an inability to work since July 4, 2007, due to fibromyalgia, arthritis, torn ACL, and depression.

(Tr. 105-110, 128, 132).  An administrative hearing was held on January 6, 2012, at which

Plaintiff appeared with counsel and testified.  (Tr. 28-49).

By written decision dated March 20, 2012, the ALJ found that Plaintiff had an

impairment or combination of impairments that were severe - mood disorder, back disorder, and

-1-

knee impairment status post surgery. (Tr. 14). However, after reviewing all of the evidence

presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of

severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P,

Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity

(RFC) to:

> perform sedentary work as defined in 20 CFR 416.967(a) except the
> claimant cannot climb ropes, ladders, or scaffolds; the claimant can
> occasionally climb stairs, and ramps, balance, crawl, kneel, stoop, and
> crouch; the claimant must avoid hazards including unprotected heights
> and moving heavy machinery; the claimant can perform work where
> interpersonal contact is incidental to the work performed; and the
> claimant can perform work where the complexity of tasks is learned and
> performed by rote, with few variables, and little judgment is required, and
> where the supervision required is simple, direct, and concrete.

(Tr. 16). With the help of the vocational expert (VE), the ALJ determined that there were jobs

Plaintiff would be able to perform, such as assembler, compact assembler, shoe bucklers and

lacers, addressing clerk, nut sorter, zipper trimmer, and check weigher. (Tr. 23).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

considered additional records and denied that request on March 29, 2013. (Tr. 1-5).

Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant

to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now

ready for decision. (Docs. 8, 12, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are

presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial

gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

## III.   Discussion:

Plaintiff raises the following arguments on appeal: 1) The ALJ erred in relying on the opinions of non-medical sources to formulate the RFC; 2) The ALJ erred in rejecting the treating source's medical opinions and relying on the opinions of State agency physicians who did not examine or treat Plaintiff; 3) The ALJ erred in failing to fulfill his duty to develop the record and obtain a consultative examination as his RFC, particularly as to Plaintiff's mental impairments; 4) The ALJ erred by ignoring substantial opinion evidence reflected by GAF scores; and 5) The ALJ erred in failing to consider Plaintiff's ability to sustain employment. (Doc. 8).

### A.   RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain

-4-

are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

The ALJ found Plaintiff retained the RFC to perform sedentary work with certain limitations. (Tr. 16-17). In making this determination, the ALJ reported that Plaintiff resided with five of her seven children (ages 16, 11, 9, 5 and 2), and completed the 10th grade. (Tr. 17). He further noted that she last worked in July of 2007 at a chicken processing plant, and alleges she is presently unable to work.  (Tr. 17).  The ALJ considered and discussed the medical records of Dr. W.R. Young, Mary Stanley, APN, Dr. Jacob E. Abraham, Dr. Keith J. Bolyard, and Gina Miesner, M.S., LPEI.  (Tr. 15-20). He also considered the x-rays and MRI of Plaintiff's lumbar spine (Tr. 18), and Plaintiff's obesity. (Tr. 19). The ALJ gave little weight to the opinions of Dr. Young, Mary Stanley, APN, and Gina Miesner, M.S., LPEI, finding that Dr. Young's opinions were conclusory and not sufficiently supported by his treatment, that Ms. Stanley's records do not support her conclusions/diagnoses and that she is not an acceptable medical source, and that Ms. Miesner is also not an acceptable medical source, and her opinion in the Medical Source Statement was inconsistent with the record as a whole. (Tr. 21). The ALJ gave substantial weight to the opinions of Plaintiff's remaining treating providers, and great weight to the opinions of

AO72A
(Rev. 8/82)

the agency consultative "examiners,"[1] as he found them to be consistent with the record as a whole. (Tr. 22).

For the reasons stated below, the Court finds that substantial evidence supports the ALJ's RFC determination and the weight he gave to the various physicians and health care providers.

The records reflects that on July 27, 2009, Dr. Terrell Bishop, Staff Psychiatrist for Western Arkansas Counseling and Guidance Center (WACGC), saw Plaintiff, who was then on Celexa and Alprazolam, and noted that Plaintiff used cigarettes, tobacco, pot, stimulants, and alcohol over the years, and at that time, drank three cases of beer a month and smoked a pack of cigarettes per day. (Tr. 287).  On July 30, 2009, Plaintiff advised Clark Williams, Ph.D., LPC, of WACGC, that she was applying for SSI and said that she was told by her attorney to come into therapy. (Tr. 289).  On August 6, 2009, Mr. Williams reported that there was no evidence of depression or anxiety, and on September 3, 2009, he indicated Plaintiff was on medication and was somewhat more stable. (Tr. 290-291).

On December 16, 2009, Dr. Young reported that Plaintiff continued to complain of significant low back pain and stiffness and that she was still massively obese. (Tr. 228). He reported that he had very little to offer Plaintiff, and put her on Methocarbinol and Lucenta for "what as far as I can tell is fibromyalgia syndrome and obesity." (Tr. 228).  On February 12, 2010, Dr. Young reported that Plaintiff was doing fairly well, and that her pain syndrome had

---

[1]Plaintiff argues that the ALJ erred by referring to the agency physicians as "examining" physicians. While it is true that the agency physicians were non-examining consultants, Plaintiff has failed to show that this incorrect reference was harmful. Plaintiff merely argues and assumes that the ALJ was under the impression the opinions were from examining physicians, and erroneously gave them greater weight than they were entitled to receive. The Court is not persuaded by Plaintiff's argument. The ALJ explained why he did not give the other examining providers (Dr. Young, Mary Stanley, APN, and Gina Miesner, M.S., LPEI) greater weight, and was justified in giving the agency physicians' opinions greater weight, whether examining or non-examining.  Plaintiff has failed to show the ALJ would have decided differently if the error had not occurred, and the error is therefore harmless. See Byes v. Astrue, 687 F.3d 913, 917 (8th Cir. 2012).

been improved with Lunesta prescription and Methocarbinol and would continue this for "what appears to be fibromyalgia." (Tr. 227).

On May 22, 2010, Plaintiff presented herself to Mercy Hospital Scott County Rural Health Clinic (Scott County Clinic), complaining that she twisted her left knee. (Tr. 313). On June 29, 2010, Dr. Keith Bolyard, of River Valley Musculoskeletal Center, reviewed Plaintiff's x-rays of her knee, which he reported showed some mild arthritic changes of the medial compartment. (Tr. 230). On July 29, 2010, Plaintiff was doing better with her knee. (Tr. 232).

On January 24, 2011, a Diagnostic Evaluation from Donna Hunter, LCSW, of WACGC, was performed. (Tr. 235). It was reported that Plaintiff came in for her depression and anxiety, and that she had seven children, five of which were at home. (Tr. 235). It was further reported that Plaintiff started drinking alcohol at age 13 and currently drank two or three times a month. Plaintiff reported that when she drank, she drank a lot at one time. (Tr. 235). Plaintiff reported she started smoking cigarettes at age 13 and currently smoked 10 a day. (Tr. 235). She stated she started smoking marijuana at age 13 and that she currently smoked it "when I can, if it was legal I would smoke it daily." (Tr. 235). Plaintiff was diagnosed with major depressive disorder, recurrent, moderate, and panic disorder without agoraphobia. (Tr. 238). She was given a GAF score of 53. (Tr. 238).

On February 10, 2011, Dr. Bishop, of WACGC, saw Plaintiff, who stated that in years past she tried Prozac and Celexa and felt they did not help much. (Tr. 240). She reported she smoked pot weekly since age 12, drank once a month, and smoked a half pack of cigarettes per day. (Tr. 240). She reported she was not on any medication at that time, but had previously been on Xanax, Ativan, and Celexa. (Tr. 240). She was diagnosed with dysthymia, cannabis abuse,

-7-

previously poly substance but in remission, anxiety and generalized anxiety disorder. (Tr. 241). She was given a GAF score of 50. (Tr. 2410.

On February 21, 2011, a left knee arthroscopy was performed with partial lateral maniscectomy and allograft reconstruction, 9 - mm graft using old tibial tunnel with EZLoc femoral fixation, and removal of previous tibial fixation screw. (Tr. 324).  On February 28, 2011, Dr. Bolyard reported Plaintiff was doing well after her surgery. (Tr. 323).

On February 22, 2011, non-examining consultant, Dr. Jim Takach, completed a Physical RFC Assessment, concluding that Plaintiff could perform sedentary work with certain limitations. (Tr. 273-280).

On February 28, 2011, non-examining consultant, Cheryl Woodson-Johnson, Psy.D., completed a Mental RFC Assessment form and Psychiatric Review Technique form. (Tr. 247, 251). Dr. Woodson-Johnson found that Plaintiff was able to perform work where interpersonal contact was incidental to the work performed, e.g. assembly work; where complexity of tasks was learned and performed by rote, with few variables, little judgment, and where supervision required was simple, direct and concrete (unskilled). (Tr. 247). She also found that Plaintiff had a mild degree of limitation in restriction of activities of daily living, moderate degree of limitation in difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. (Tr. 247, 261).

An x-ray of Plaintiff's lumbar spine, dated March 4, 2011, revealed small anterior end plate osteophytes at T12, L1, L2, L3, and L4, with no acute abnormality seen. (Tr. 370).

On April 18, 2011, Mary Stanley, APN, of Scott County Rural Clinic, reported that

AO72A
(Rev. 8/82)

Plaintiff's anxiety problem had been gradually improving, and the symptoms were relieved by medications. (Tr. 308).

On April 26, 2011, Plaintiff was seen by Dr. Jacob E. Abraham, of Hot Springs Interventional Pain Management. (Tr. 301). Dr. Abraham noted that Plaintiff smoked and used alcohol, and had decreased range of motion with exacerbation of pain on extension and rotation. (Tr. 303). Dr. Abraham found Plaintiff suffered from lumbar spondylosis and trochanteric bursitis in her right hip.  (Tr. 304). He also reported that an MRI of Plaintiff's lumbar spine revealed small disk herniations at L3-4 and L4-5. (Tr. 304).

On April 28, 2011, Dr. Bishop reported that Plaintiff stated she felt somewhat better on the medicines, and that she quit her "pot" a week prior. (Tr. 293).

On May 23, 2011, Plaintiff complained of right arm pain to Scott County Clinic, but showed no limited range of motion, no stiffness and no itching.  She had tried cold, rest and over-the-counter pain medications for the symptoms, which provided mild relief. (Tr. 356). An x-ray of her right elbow was negative. (Tr. 369).

On July 28, 2011, Plaintiff reported to Dr. Bishop that she was not having any new medical problems, but still had chronic back pain. (Tr. 407). Dr. Bishop reported that Nortriptyline and Klonopin were helping, and Plaintiff wanted to remain on them. (Tr. 407).

On November 9, 2011, it was reported by WACGC that they were unable to contact Plaintiff. (Tr. 398). On January 3, 2012, Ms. Miesner completed a Discharge Summary, and Plaintiff was given a GAF score of 53. (Tr. 386). On that same date, Ms. Miesner opined that it was doubtful that Plaintiff would be able to perform full-time work. (Tr. 381). Ms. Miesner also completed a Mental Medical Source Statement of that same date, opining that she believed it

-9-

would be difficult for Plaintiff to maintain employment, and that she utilized poor judgment and was unreliable. (Tr. 385).

The Court finds, based upon the record as a whole, that the ALJ's findings that Plaintiff would be able to perform sedentary work with certain limitations takes into account all of the Plaintiff's impairments that are supported by the evidence, both physical and mental. Furthermore, the ALJ gave sufficient reasons to warrant the weight he gave to the various physicians, both treating and non-treating  He noted that Dr. Young's opinion was conclusory and not supported by his treatment records, and that the opinions of Mr. Miesner and Ms. Stanley are not from "acceptable medical sources." The ALJ's opinion indicates that he did consider all of the opinions, and gave them the weight they deserve.

Accordingly, the Court finds there is substantial evidence to support the ALJ's RFC determination.

### B.     Failing to Fully and Fairly Develop the Record:

The ALJ has a duty to fully and fairly develop the record.  See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995);   Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000).   This is particularly true when Plaintiff is not represented by counsel.  Payton v. Shalala, 25 FG.3d 684, 686 (8ᵗʰ Cir. 1994).   This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary.  See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010).  However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record.  See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record

-10-

is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989).

Plaintiff argues that the ALJ should have ordered a consultative examination, particularly as to Plaintiff's mental impairments. The ALJ did, in fact, obtain a Mental RFC Assessment on February 28, 2011, from non-examining consultant, Cheryl Woodson-Johnson, Psy.D. (Tr. 247). Dr. Woodson-Johnson also completed a Psychiatric Review Technique form on February 28, 2011. (Tr. 251-263). It was in the Mental RFC Assessment that Dr. Johnson found Plaintiff would be able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; where complexity of tasks is learned and performed by rote, with few variables, little judgment and where supervision required is simple, direct and concrete (unskilled). (Tr. 247). This limitation was included in the ALJ's RFC Assessment. Plaintiff's argument is without merit, and there is substantial evidence to support the fact that the ALJ fully and fairly developed the record.

**C.     GAF scores:**

Plaintiff asserts that the GAF scores given her at various times (45, 53, 50, 53, and 51) should have been addressed. The Eighth Circuit has held that GAF scores are "not essential to the accuracy of an RFC determination, only that it may be of considerable help in formulating RFC." Earnheart v. Astrue, 484 F. Appx. 73, 75 (8th Cir. 2012); King v. Colvin, No. C13-3039-LTS, 2014 WL 1344194, at *11 (N.D.Iowa, Apr. 4, 2014). In addition, in Jones v. Astrue, 619

-11-

F.3d 963, 973-974 (8th Cir. 2010), the Eighth Circuit referenced a 6th Circuit opinion, DeBoard

v. Comm'r of Soc.Sec., 211 Fed. Appx. 411, 415 (6th Cir. 2006(unpublished), in support of its

position, when it stated that "an ALJ may afford greater weight to medical evidence and

testimony than to GAF scores when the evidence requires it." Jones, 619 F.3d at 974.  The Sixth

Circuit in DeBoard also recognized one of its earlier opinions,  Howard v. Comm'r of Soc. Sec.,

276 F3d. 235, 241 (6th Cir. 2002), where it found that the failure to reference a GAF score is not,

standing alone, sufficient ground to reverse a disability determination.

      Based upon the foregoing, the Court finds Plaintiff's arguments regarding her GAF scores

are without merit.

      **D.**    **Ability to Sustain Employment:**

      As noted by Defendant, inherent in the definition of RFC is the expectation that the RFC

assessment will consider the individual's ability to work on a regular and continuing basis. See

20 C.F.R. § 416.945(b), (c) ("we...determine your residual functional capacity for work activity

on a regular and continuing basis").  In addition, the ALJ noted that in determining a Plaintiff's

RFC, he must consider her ability to do physical and mental work activities "on a sustained basis

despite limitations from her impairments." (Tr. 13).

      Accordingly, as set out earlier, the Court finds the ALJ's RFC determination is supported

by substantial evidence, which includes the fact that Plaintiff would be able to perform the

sedentary work with limitations on a sustained basis.

**IV.**    **Conclusion:**

      Accordingly, having carefully reviewed the record, the Court finds substantial evidence

supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby

affirmed.  The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 14th  day of May, 2014.

/s/ Erin L. Setser

HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-13-